**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| _____ | : | CIVIL ACTION |
| CAROLINE GU DELLAPENNA | : | |
| | : | |
| Plaintiff, | : | NO. 09-CV-06110-TJS |
| | : | |
| v. | : | |
| | : | |
| TREDYFFRIN/EASTTOWN SCHOOL | : | |
| DISTRICT | : | JURY TRIAL DEMANDED |
| | : | |
| DANIEL WATERS, and | : | |
| | : | |
| MICHAEL AZZARA | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## AMENDED CIVIL ACTION COMPLAINT

## PRELIMINARY STATEMENT

Defendants terminated Plaintiff from her position because of her gender, her national origin, and her age after fabricating charges of fraud and impropriety against her and she hereby files this Complaint alleging violations of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et. seq., as amended ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621-634 (ADEA).

## PARTIES

1.      Plaintiff CAROLINE GU DELLAPENNA ("Ms. Dellapenna") is a female individual who resides at 212 St. George's Road, Ardmore, PA 19003. Ms. Dellapenna is a naturalized American citizen who is a native born Chinese and she is 50 years old.

2.      Defendant TREDYFFRIN/EASTTOWN SCHOOL DISTRICT ("School District") is a School District organized in accordance with the laws of the Commonwealth of Pennsylvania with its principal place of business located at 940 West Valley Road, Suite 1700, Wayne, Pennsylvania.

3.      Defendant MICHAEL AZZARA ("Azzara") is an adult Caucasian male who resides at 827 Williamsburg Boulevard, Downingtown, Pennsylvania and at all times material to this complaint was Chief Operations Officer of School District.

4.      Defendant DANIEL WATERS ("Waters") is an adult Caucasian male who resides at 915 Tennis Way, Lansdale, Pennsylvania and at all times material to this complaint was Superintendant of School District.

5.      At all times relevant to this action, School District continuously employed at least 15 employees or more.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, 1343 and 1367 and 42 U.S.C. § 2000(d)-5(f)(3).

7.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. 2000e-5(f)(3).

8.      On or about June 7, 2007 Ms. Dellapenna filed a Charge, Charge No. 530-2007-03409, with the Equal Employment Opportunity Commission alleging that School District violated Title VII; the Charge was dual filed with the Pennsylvania Human Relations Commission ("PHRC"), Docket No. 200703694.  A copy of the Charge is attached as Exhibit A.

9.      Ms. Dellapenna received a Dismissal and Notice of Right to Sue letter from the Equal Employment Opportunity Commission on or after September 24, 2009, a copy of which is attached as Exhibit B.

10.    Ms. Dellapenna received a right-to-sue letter from the PHRC dated July 21, 2008.

## FACTS

11.    Ms. Dellapenna was hired by School District on May 6, 1996 as its Controller/Tax Collector.

12.    In June 2005 Ms. Dellapenna began reporting to Azzara School District's then-Chief Operations Officer.

13.    In June 2006, Ms. Dellapenna was promoted to Director of Finance, and she continued to report to Azzara.

14.    Prior to Azzara's hire, School District had no Chief Operations Officer position.

15.    Ms. Dellapenna consistently received positive performance reviews; she received a rating of 9.13 out of 13 on her June 2006 performance review.

16.    In October 2006, Waters and Lois Heist  (Caucasian) School District's Director of Personnel, told Ms. Dellapenna that a forensic accountant/fraud investigator Elliot A. Roth of Goldenberg Rosenthal, LLP ("Investigator"), had been hired to investigate allegations of fraud against her regarding the accounts payable accruals for the School District's financial statements for the fiscal year ending June 30, 2006.

17.    The Investigator's report opined that there were certain inaccuracies with the financial reports of the School District.

18.    The executive summary of the investigator's report states, in pertinent part:

> "…[W]e did not discover any evidence indicating that a School District employee personally benefited financially from the inaccuracies."

19.     The investigator's report does not specifically or generally conclude that Ms. Dellapenna engaged in any fraud whatsoever while an employee of the School District or otherwise.

20.     The Investigator's report did not examine or explore the actions, inactions, or conduct of Azzara or Waters, both of whom were intimately involved in the financial management of the School District; instead it focused on Ms. Dellapenna.

21.     Prior to the Investigator's starting any investigation, Ms. Dellapenna had an excellent record of performance, an exemplary record of ethical conduct and fastidious accounting for the School District's and the taxpayer's funds.

22.     Prior to the Investigator's starting any investigation, Ms. Dellapenna had never been disciplined or even warned that her work was in any way less than acceptable.

23.     Upon learning of the Investigator's report, Ms. Dellapenna was shocked and disturbed by Waters' and Heist's baseless allegations.

24.     Waters' and Heist's charges against Ms. Dellapenna were ultimately neither supported nor justified by the Investigator's report.

25.     Ms. Dellapenna vehemently denied that she had ever committed any type of financial wrongdoing.

26.     On October 10, 2006, October 19, 2006 and November 1, 2006 Ms. Dellapenna requested that she be given the opportunity to see the documents upon which the alleged claims were based.

27.     On or about November 3, 2006, Waters and Heist promised to give Ms. Dellapenna the requested documents substantiating their claims of fraud against Ms. Dellapenna once the auditors had completed their work.

28.     Waters and Heist subsequently refused and have never turned over a single document to Ms. Dellapenna to support their groundless claims.

29.     One of the alleged inaccuracies cited by the investigator's report centered around an alleged "over-accrual" of accounts payable at the end of the School District's fiscal year, June 30, 2006.

30.     Accruing expenses at year's end is a standard accounting practice required under the generally accepted accounting principles and the Manual of Accounting and Financial Reporting for Pennsylvania Public Schools, to ensure sufficient funds are set aside to cover outstanding and/or unreported expenses including, but not limited to, salary and benefits and goods or services received and remaining unpaid at the end of a fiscal year.

31.     The School District adopted Policy 3340 which provided in pertinent part as follows:

> "[E]very purchase made on behalf of the District shall be made by formal purchase order, issued by authority of the responsible administrative officer, except those purchases made under provision of the petty cash regulations."

Policy 3340 adopted January 26, 1970, revised January 243, 1994 and November 18, 2002.

32.     Azzara knew that Policy 3340 was not being followed, and testified to that effect on October 10, 2005.  He noted that failure to comply with Policy 3340 was circumventing internal controls established to assure appropriate authorizations for expenditures on behalf of eh School District.

33.     Other than knowing and testifying about the issue, Azzara took no appreciable steps to address the habitual non-compliance.

34.     The year-end accrual of expenses had been done during the entire ten years that Ms. Dellapenna was employed at the School District, and for an undetermined period before her employment.

35.     The year end accrual of expenses was never questioned when any other individual held the position Ms. Dellapenna held.

36.     Azzara was never criticized, disciplined or investigated despite the chronic violation of School District policy.

37.     School District school principals and department heads had an ongoing obligation to report to Waters or Azzara so that Ms. Dellapenna's department could make an accurate and timely accounting of the School District's financial commitments prior to the end of the accounting year.

38.     School District school principals and department heads consistently failed to make such reports to either Waters or Azzara, and neither Waters nor Azzara took adequate steps to ensure that they do.

39.     These failures of financial reporting were discussed in the Investigator's report, but no criticism was leveled at either Waters or Azzara, who are white males, even though their own failure to act was to blame.

40.     As a result of Azzara's and Water's own inactions, Ms. Dellapenna was required, in accordance with generally accepted accounting principles to accrue certain accounts payable referable to those expenditures not adequately reported.

41.     Ms. Dellapenna complained on numerous occasions, both orally and in writing, to Azzara about the need for tighter operating controls to minimize the problem, but neither Waters nor Azzara took any action in response to these complaints.

42.     The Investigator's report alleged that the School District's financial practices were "dysfunctional," but failed to cite either Azzara or Waters for their own failures in financial reporting, which was the cause of the over-accrual method.

43.    The independent auditors for the School District, Rainer & Co., regularly and annually audited the financial statements of the School District during each of the ten years while Ms. Dellapenna was a School District employee.

44.    In each of the ten years while Ms. Dellapenna worked for the School District, the independent auditors found no irregularities in the financial statements in general, or on Ms. Dellapenna's part in particular.

45.    On November 21, 2006, Rainer and Co. issued an unqualified clean audit report for the year for which the fraud charges were made against Ms. Dellapenna.

46.    That particular independent audit stated that the School District's financial statements were in all material respects in conformity with US generally accepted accounting principles for the School District's fiscal year ending June 30, 2006.

47.    The School District's draft Management Representation letter dated to its auditors dated November 21, 2006 denies at paragraph 7 "knowledge of any allegations of fraud or suspected fraud."

48.    The November 21, 2006 draft correspondence is attached as an exhibit to Exhibit D hereto, referred to in paragraph 99, *infra,* Bates number P000007.

49.    On November 29, 2006, Ms. Dellapenna timely filed the School District Annual Financial Report for the fiscal year ending June 30, 2006 with the Pennsylvania Department of Education.

50.    Despite the fact that the Investigator's report found no evidence of fraud by Ms. Dellapenna, on or about November 14, 2006 Azzara spoke loudly in public and with others present about Ms. Dellapenna having committed acts of "fraud" on the School District.

51.    Ms. Dellapenna and others overheard these comments by Azzara.

52.    Ms. Dellapenna immediately complained to Heist and Waters of the potential damage to her reputation from Azzara's reckless, unfounded comments.

53.     On or about December 14, 2006, Azzara again loudly discussed within public hearing and with others present the Ms. Dellapenna's conduct in conjunction with alleged fraud.

54.     Ms. Dellapenna again complained to Heist and Waters of the potential damage to her reputation from Azzara's reckless, unfounded comments.

55.     The School District's final Management Representation letter dated to its auditors dated December 19, 2006 states:

> "We have no knowledge of any fraud or suspected fraud affecting the school district involving:
> a.     Management;
> b.     Employees who have significant role in internal control; or
> c.     Others where the fraud could have a material effect on the financial statements."

again denies at paragraph 7 "knowledge of any allegations of fraud or suspected fraud."

56.     The December 19, 2006 correspondence is attached as an exhibit to Exhibit D hereto, referred to in paragraph 99, *infra,* Bates number .P000012.

57.     Azzara's hostility to Ms. Dellapenna was not due to any wrongdoing by Ms. Dellapenna but instead because of  unlawful bias, due to her age, her gender and/or her national origin.

58.     Azzara's outburst was inappropriate and violated the School District's anti-discrimination and harassment policies.

59.     Upon information and belief, the School District did not investigate any of Ms. Dellapenna's complaints about Azzara's inappropriate conduct.

60.     Upon information and belief, the School District took no action against Azzara for this violation of School District policies and regulations regarding equal employment opportunity.

61.     The School District initially expressly refused to review Ms. Dellapenna's complaints.

62.     In November and December of 2006, Waters told Ms. Dellapenna that the School District would not review her complaints until after she submitted her Annual Financial Report to the Pennsylvania Department of Education.

63.     On or about In November and December of 2006, Waters told Ms. Dellapenna that the School District would not review her complaints until after she submitted her Annual Financial Report to the Pennsylvania Department of Education.

64.     Even after Ms. Dellapenna submitted the Annual Financial Report to the Pennsylvania Department of Education the School District failed to conduct any investigation of Azzara or engage in any remedial measures of any kind.

65.     Ms. Dellapenna complained again on December 15, 2006 to Mr. Kevin Mahoney, President of the School Board, about Azzara's inappropriate public comments and allegations against her, and about the discriminatory conduct of Azzara.

66.     Despite her renewed complaint, upon information and belief, the School District failed to take any action against Azzara for this violation of School District policies and regulations regarding.

67.     Despite actual notice to the Waters, Heist and the President of the School Board, the School District failed and refused to review or investigate Ms. Dellapenna's complaints.

68.     No employee of the School District has ever denied that Azzara made the derogatory, scandalous and slanderous statements about Ms. Dellapenna having committed fraud.

69.     Heist accused Ms. Dellapenna of eavesdropping in response to Ms. Dellapenna's complaints about Azzara.

70.     Waters instructed Azzara to keep his door closed when discussing confidential matters.

71.     On December 20, 2006, Waters and Heist met in person with Ms. Dellapenna, once again accused her of fraud, and once again failed and refused to provide her with any documents on which they based their allegations.

72.     During this December 20 meeting, Waters and Heist also accused Ms. Dellapenna of having a bad relationship with, and mistreating, her staff.

73.     Prior to this December 20 meeting between Waters, Heist and Ms. Dellapenna, Azzara had taken the extraordinary step of inviting selected members of her staff to meet with him to complain about her.

74.     Upon information and belief, neither Waters nor Azzara ever invited staff of Caucasian management, non-Chinese management, or management under the age of 40 to meet with them to discuss their complaints about their respective managers.

75.     Upon information and belief, neither Waters nor Azzara ever retained an outside auditor or investigator to explore the conduct of Caucasian management, non-Chinese management, or management under the age of 40 to determine whether in the course of performing their jobs such individuals engaged in fraud.

76.     Azzara himself typed up disparaging statements about Ms. Dellapenna allegedly made by these staff members and asked the staff members to sign them.

77.     The overwhelming majority of Ms. Dellapenna's staff were union members, subject to a collective bargaining agreement that included a grievance procedure.

78.     Not one staff member in ten years, including those staff members recruited for statements prepared by Azzara, ever filed a grievance against Ms. Dellapenna pursuant to the grievance procedures contained in the School District collective bargaining agreement or in accordance with any of School District's policies and regulations.

79.     On January 5, 2007, Ms. Dellapenna complained in writing to Waters that she was being discriminated against on the basis of her age, sex, race and/or ethnic background.  A copy of this complaint is attached as Exhibit C.

80.     Ms. Dellapenna also emailed this complaint to Heist and the President of the School Board of the District on January 5, 2007 at 3:22 p.m.

81.     Ms. Dellapenna's written complaint to Waters was the third time she had complained to the School District about discriminatory conduct based upon her age, race and national origin.

82.     Also on or about January 5, 2007, the investigator issued his final written report which failed to find any evidence of fraud on the part of Ms. Dellapenna.

83.     The investigator's report also opined that "internal controls . . . need to be documented and improved."

84.     Azzara, not Ms. Dellapenna, was responsible for the internal controls applicable to the school principals and department heads who reported directly to Waters and Azzara.

85.     The Investigator's report concluded that the school principal's late purchasing and/or reporting of their purchases were the primary causes of the need for the year-end over-accruals.

86.     Thus, the Investigator, who had been retained for purposes of impugning Ms. Dellapenna's conduct, in fact concluded that the same deficiencies existed in 2006 to which Azzara testified a year earlier.

87.     The Investigator's report does not evaluate whether Azzara himself was responsible for any problems within the accounting or operations departments.

88.     The Investigator's report does not state whether Azzara was even interviewed about internal controls.

89.     Upon information and belief, Azzara was not disciplined in any way following the Investigator's report; nor was he disciplined for his treatment of Ms. Dellapenna.

90.     On January 18, 2007, during a meeting with Heist and Robin McConnell, Director of Technology, the School District offered Ms. Dellapenna a new contract, but told her that she had to sign the contract before the end of the day.

91.     During the January 18, 2007 meeting, Ms. Dellapenna requested clarification of some of the terms contained in the contract which were not clear.

92.     Heist and McConnell refused to clarify or respond to any of Ms. Dellapenna's questions, so she did not sign the contract that day.

93.     On January 25, 2007, the School District issued a report on the letterhead of School District's solicitor stating that a School District Ad Hoc Committee, composed of Board Members Deborah Rollins and Peter Motel, had found no evidence of discrimination by any School District employee against Ms. Dellapenna.

94.     Ms. Dellapenna was never interviewed by, nor did she ever speak to anyone purportedly on a School District Ad Hoc Committee charged with investigating her previous three complaints of discrimination.

95.     Although the School Board adopted a policy on "Equality of Opportunity in Employment" in 1981, it has never adopted any regulations or procedures to implement this policy or under which to conduct investigations of violations of the policy.

96.     Because of this lack of any regulation or procedure, there are no established procedures to investigate charges brought against the School District for employment discrimination.

97.     Upon information and belief, the Ad Hoc Committee was in fact charged with determining a basis upon which to terminate Ms. Dellapenna's employment, not investigate her three complaints of discrimination.

98.     No Ad Hoc Committee was ever formed by the School District to investigate Azzara's and Water's repeated failures in financial reporting verified and confirmed by the Investigator's report, but blamed on Ms. Dellapenna.

99.     Ms. Dellapenna submitted a written statement to the School District Ad Hoc Committee on January 16, 2007, but the Ad Hoc Committee never even met with her to discuss her complaints.  This statement is attached hereto as Exhibit D.

100.     In clear pretext for discrimination, and in retaliation for Ms. Dellapenna's discrimination claims, the January 25, 2007 report of the Ad Hoc Committee also stated that the School District's Board had found "substantial misconduct" on Ms. Dellapenna's part to justify "dismissal."

101.     Upon information and belief, in making its decision to recommend Ms. Dellapenna's termination, the Ad Hoc committee considered the results of the interviews improperly conducted by Azzara, as well as Azzara's own input.

102.     On January 26, 2007, Waters informed Ms. Dellapenna that she was suspended without pay and that the Ad Hoc Committee of the School Board would recommend to the full Board that Ms. Dellapenna be terminated for "willful, wanton and/or gross misconduct as well as material and substantial dishonesty and failure to meet the performance objective of creating a civil working environment and retaining qualified staff."

103.     On March 16, 2007, Ms. Dellapenna received a letter from Heist terminating her employment and offering severance.  A copy of this letter is attached as Exhibit E.

104.     Ms. Dellapenna's contract provided that she was eligible to receive severance only if she were terminated "without cause."

105.     On April 23, 2007, the School Board voted to terminate Ms. Dellapenna's employment, retroactively to January 26, 2007, without stating a cause for the dismissal.  A copy of correspondence to Ms. Dellapenna dated April 24, 2007 confirming this is attached as Exhibit F.

106.     Ms. Dellapenna was replaced by Jeffrey Curtis, a white American male in his thirties, and an individual who had substantially less experience and qualifications for the position than did Ms. Dellapenna.

107.     Defendants hired Mr. Curtis on May 9, 2007, without a public search.

### COUNT I
### Plaintiff v. Defendant School District
*Discrimination on the Basis of Gender*
*in Violation of Title VII of the Civil Rights Act of 1964, as Amended (Title VII)*

108.     Plaintiff Caroline Gu Dellapenna incorporates all prior paragraphs as though fully set forth herein.

109.     As set forth above, School District discriminated against Ms. Dellapenna  by falsely and maliciously accusing her of fraud and staff mistreatment, and terminating her employment as a pretext for discrimination.

110.     Male employees are not terminated for complaints made by their staff without being offered the opportunity to respond and/or without having complaints about them brought through the union grievance procedure or School District's complaint resolution process.

111.     Male employees are not subjected to an investigations by an Ad Hoc Committee or other entities or contractors of the School District School Board where they are faced with termination without an opportunity to be heard.

112.     The School District is strictly liable to Ms. Dellapenna under *Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998)* and *Faragher v. Boca Raton,* 524 U.S. 775 (1998) for gender discrimination because:

a.     The School District did not have or utilize a preventative or corrective process by which a claim of gender discrimination could be brought to the attention of management;

b.     When a claim of discrimination was presented to the School District by Ms. Dellapenna, the School District failed and refused to conduct a reasonable and timely investigation; and

c.     Once the investigation was concluded, Defendants failed to take appropriate remedial measures to avoid harm.

113.   School District replaced Ms. Dellapenna with a less qualified male employee.

114.   The conduct of Azzara and Waters was at all times performed within the scope of their responsibilities as employees of the School District.

WHEREFORE, Plaintiff demands judgment against Defendant School District for lost wages and benefits, front pay, compensatory damages, punitive damages and reinstatement, together with costs, interest, attorney's fees and such other relief as the Court deems just and proper.

### COUNT II
### Plaintiff v. All Defendants
*Discrimination on the Basis of Gender*
*in Violation of the Pennsylvania Human Relations Act (PHRA)*

115.   Plaintiff Caroline Gu Dellapenna incorporates all prior paragraphs as though fully set forth herein.

116.   As set forth above, Defendants discriminated against Ms. Dellapenna by falsely and maliciously accusing her of fraud and staff mistreatment, and terminating her employment as a pretext for discrimination.

117.    Unlike Ms. Dellapenna, a female employee, male employees are not terminated for complaints of alleged staff mistreatment without having the opportunity to respond to complaints about them or without having complaints about them addressed through either the collective bargaining process or the School District's complaint resolution process.

118.    Unlike Ms. Dellapenna, a female employee, male employees are not subjected to an investigation by an Ad Hoc Committee of the School District School Board or other entities or contractors where they are faced with termination without an opportunity to be heard.

119.    Unlike Ms. Dellapenna, a female employee, neither Waters nor Azzara were subjected to an investigation by an Ad Hoc Committee of the School District School Board or other entities or contractors where they were faced with termination without an opportunity to be heard.

120.    Unlike Ms. Dellapenna, a female employee, neither Waters nor Azzara were subjected to an investigation by an Ad Hoc Committee of the School District School Board or other entities or contractors where they were faced with termination without an opportunity to be heard, even after the Investigator's report assessed deficiencies in areas under each had responsibilities.

121.    Azzara and Waters treated Ms. Dellapenna differently than they would have a male Controller:

        a.  by publically and privately undermining her with her staff and co-workers,

        b.  by enabling the fabrication of charges of fraud,

        c.  by retaining an investigator to challenge practices which were attributable to Azzara's and Waters' own inactions and failures,

        d.  by misusing and misinterpreting the investigator's report, and

        e.  by creating a pretext to terminate her employment with School District.

122.    School District replaced Ms. Dellapenna with a less qualified male employee.

123.    Azzara and Waters aided, abetted and facilitated the unlawful discriminatory practices of School District in express violation of the Pennsylvania Human Relations Act. Some, but not all of the ways in which they aided and abetted such discriminatory conduct, include:

a.    undermining her authority; sneaking around behind her back to solicit complaints to justify their own biases against her; engaging in meetings designed to look like investigations;

b.    writing memoranda and emails which falsely accuse her of fraudulent conduct; and

c.    blaming her for their own improper conduct or failure to act.

WHEREFORE, Plaintiff demands judgment against Defendants individually and jointly for lost wages and benefits, front pay, compensatory damages, punitive damages and reinstatement, together with costs, interest, attorney's fees and such other relief as the Court deems just and proper.

## COUNT III
### Plaintiff v. Defendant School District
*Discrimination on the Basis of National Origin*
*in Violation of Title VII of the Civil Rights Act of 1964, as Amended (Title VII)*

124.    Plaintiff Caroline Gu Dellapenna incorporates all prior paragraphs as though fully set forth herein.

125.    As set forth above, School District did not falsely accuse Caucasian employees of fraud and staff mistreatment and summarily terminate their employment.

126.    For instance, when a state auditor identified two Caucasian female supervisors in the IT Department of the School District as responsible for serious deficiencies in internal controls, the School District took no action disciplinary against them.

127.     Caucasian employees are not subjected to investigations by an Ad Hoc Committee of the School Board or other entities or contractors and subjected to termination without an opportunity to be heard.

128.     School District replaced Ms. Dellapenna with a less qualified Caucasian employee.

WHEREFORE, Plaintiff demands judgment against Defendant School District for lost wages and benefits, front pay, compensatory damages, punitive damages and reinstatement, together with costs, interest, attorney's fees and such other relief as the Court deems just and proper.

### COUNT IV
### Plaintiff v. All Defendants
*Discrimination on the Basis of National Origin*
*in Violation of the Pennsylvania Human Relations Act (PHRA)*

129.     Plaintiff Caroline Gu Dellapenna incorporates all prior paragraphs as though fully set forth herein.

130.     Upon information and belief, and as set forth above, Defendants never falsely accused Caucasian employees of fraud and staff mistreatment and did not terminate Caucasian employees without an opportunity to be heard.

131.     Azzara and Waters treated Ms. Dellapenna differently than they would have a Caucasian Controller:

        a.  by publically and privately undermining her with her staff and co-workers,

        b.  by enabling the fabrication of charges of fraud,

        c.  by retaining an investigator to challenge practices which were attributable to Azzara's and Waters' own inactions and failures,

        d.  by misusing and misinterpreting the investigator's report, and

        e.  by creating a pretext to terminate her employment with School District.

18

132.   For instance, when a state auditor identified two Caucasian female supervisors in the IT Department of the School District as responsible for serious deficiencies in internal controls, the School District took no action against them.

133.   Caucasian employees are not subjected to investigations by an Ad Hoc Committee of the School Board or other entities or contractors and subjected to termination without an opportunity to be heard.

134.   Azzara and Waters aided, abetted and facilitated the unlawful discriminatory practices of School District in express violation of the Pennsylvania Human Relations Act. Some, but not all of the ways in which they aided and abetted such discriminatory conduct, include:

a.  undermining Ms. Dellapenna's authority;

b.   sneaking around behind her back to solicit complaints to justify their own biases against her;

c.  engaging in meetings designed to look like investigations;

d.  writing memoranda and emails which falsely accuse her of fraudulent conduct; and

e.  by blaming her for their own improper conduct or failure to act.

135.   School District replaced Ms. Dellapenna with a less qualified Caucasian employee.

WHEREFORE, Plaintiff demands judgment against Defendants individually and jointly for lost wages and benefits, front pay, compensatory damages, punitive damages and reinstatement, together with costs, interest, attorney's fees and such other relief as the Court deems just and proper.

## COUNT V
### Plaintiff v. Defendant School District
*Discrimination on the Basis of Age in Violation of the*
*Age Discrimination In Employment Act of 1967, 29 U.S.C. § 621-634 (ADEA)*

136.    Plaintiff Caroline Gu Dellapenna incorporates all prior paragraphs as though fully set forth herein.

137.    As set forth above, School District discriminated against Ms. Dellapenna on the basis of her age by replacing her with a less qualified, substantially younger individual.

WHEREFORE, Plaintiff demands judgment against Defendant School District for lost wages and benefits, front pay, compensatory damages, punitive damages and reinstatement, together with costs, interest, attorney's fees and such other relief as the Court deems just and proper.

## COUNT VI
### Plaintiff v. All Defendants
*Discrimination on the Basis of Age in Violation of the*
*Pennsylvania Human Relations Act (PHRA)*

138.    Plaintiff Caroline Gu Dellapenna incorporates all prior paragraphs as though fully set forth herein.

139.    Azzara and Waters treated Ms. Dellapenna differently than they would have an under-40 year old employee:

      a.  by publically and privately undermining her with her staff and co-workers,

      b.  by enabling the fabrication of charges of fraud,

      c.  by retaining an investigator to challenge practices which were attributable to Azzara's and Waters' own inactions and failures,

      d.  by misusing and misinterpreting the investigator's report, and

      e.  by creating a pretext to terminate her employment with School District.

140.    As set forth above, School District discriminated against Ms. Dellapenna on the basis of her age by replacing her with a clearly less qualified, substantially younger individual.

141.   Azzara and Waters aided, abetted and facilitated the unlawful discriminatory practices of School District in express violation of the Pennsylvania Human Relations Act. Some, of the ways in which they aided and abetted such discriminatory conduct, include:

    a.  undermining her authority;

    b.   sneaking around behind her back to solicit complaints to justify their own biases against her;

    c.  engaging in meetings designed to look like investigations;

    d.  writing memoranda and emails which falsely accuse her of fraudulent conduct; and

    e.  by blaming her for their own improper conduct or failure to act.

WHEREFORE, Plaintiff demands judgment against Defendants individually and jointly for lost wages and benefits, front pay, compensatory damages, punitive damages and reinstatement, together with costs, interest, attorney's fees and such other relief as the Court deems just and proper.

### COUNT VII
### Plaintiff v. Defendant School District
*Retaliation for Opposing an Unlawful Employment Practice*
*in Violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII)*

142.   Plaintiff Caroline Gu Dellapenna incorporates all prior paragraphs as though fully set forth herein.

143.   Ms. Dellapenna complained of discrimination on the bases of age, gender and national origin on at least three occasions, the third such occasion being January 5, 2007 as indicated in Exhibit C hereto.

144.   At all times material to this complaint, Ms. Dellapenna had a good faith belief that the conduct of Waters, Azzara and the School District were motivated by discriminatory animus.

145.    As set forth above, School District suspended Ms. Dellapenna without pay less than one month after she complained of discrimination.

146.    Upon information and belief, the Ad Hoc Committee of the School Board, allegedly formed to investigate Ms. Dellapenna's complaints of unlawful discrimination was in fact formulated to fabricate a basis for Ms. Dellapenna's termination from employment.

147.    Ms. Dellapenna's employment with the School District was terminated on April 23, 2007, per Exhibit F hereto.

WHEREFORE, Plaintiff demands judgment against Defendant School District for lost wages and benefits, front pay, compensatory damages, punitive damages and reinstatement, together with costs, interest, attorney's fees and such other relief as the Court deems just and proper.

## COUNT VIII
### Plaintiff v. All Defendants
*Retaliation for Opposing an Unlawful Employment Practice*
*in Violation of the Pennsylvania Human Relations Act (PHRA)*

148.    Plaintiff Caroline Gu Dellapenna incorporates all prior paragraphs as though fully set forth herein.

149.    Ms. Dellapenna complained of discrimination on the bases of age, gender and national origin on at least three occasions, the third such occasion being January 5, 2007 as indicated in Exhibit C hereto.

150.    At all times material to this complaint, Ms. Dellapenna had a good faith belief that the conduct of Waters, Azzara and the School District were motivated by discriminatory animus.

151.    As set forth above, School District suspended Ms. Dellapenna without pay less than one month after she complained of discrimination.

152.    Upon information and belief, the Ad Hoc Committee of the School Board, allegedly formed to investigate Ms. Dellapenna's complaints of unlawful discrimination was in fact formulated to fabricate a basis for Ms. Dellapenna's termination from employment.

153.    Ms. Dellapenna's employment with the School District was terminated on April 23, 2007, per Exhibit F hereto.

154.    Azzara and Waters aided, abetted and facilitated the unlawful discriminatory practices of School District in express violation of the Pennsylvania Human Relations Act. Some, of the ways in which they aided and abetted such discriminatory conduct, include:

    a.  undermining her authority;

    b.  sneaking around behind her back to solicit complaints to justify their own biases against her;

    c.  engaging in meetings designed to look like investigations;

    d.  writing memoranda and emails which falsely accuse her of fraudulent conduct; and

    e.  by blaming her for their own improper conduct or failure to act.

WHEREFORE, Plaintiff demands judgment against Defendants individually and jointly for lost wages and benefits, front pay, compensatory damages, punitive damages and reinstatement, together with costs, interest, attorney's fees and such other relief as the Court deems just and proper.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor and against Defendants jointly and severally as follows:

A.	Damages in excess of ONE HUNDRED DOLLARS ($100,000);

B.	Actual damages;

C.	Consequential damages;

D.	All damages available pursuant to 42 U.S.C. §2000e *et sequitur* and 43 Pa. Cons. Stat. §954 *et sequitur*;

E.	All damages available pursuant to the Pennsylvania Human Relations Act;

F.	Reinstatement;

G.	Punitive damages as allowable by law;

H.	Reasonable attorneys' fees;

I.	Costs of this action;

J.	Damages for delay as allowable by law pursuant to Pennsylvania Rule of Civil Procedure number 238, as amended; *and*

K.	For such other and further relief as this Honorable Court deems just and appropriate, including, but not limited to an adjustment of any money damages to compensate for the tax consequences of any verdict rendered hereunder.

L.	A trial by jury is hereby demanded by Plaintiff**.**


By:	_____
	HAROLD M. GOLDNER
	Pennsylvania Attorney No. 32367
	One Belmont Avenue, Suite 703
	Bala Cynwyd, PA 19004
	(610) 664-7090
	Facsimile (610) 664-7094

## <u>CERTIFICATE OF SERVICE</u>

I, Harold M. Goldner, Esquire, Attorney for Plaintiff Caroline Gu Dellapenna hereby certify that a true and correct copy of the foregoing document was transmitted to the Clerk of the United States District Court for the Eastern District of Pennsylvania on March 15, 2010, which provides for electronic service upon the below named counsel for Defendants:

> Michael I. Levin, Esquire
> Levin Legal Group, P.C.
> 1301 Masons Mill Business Park
> 1800 Byberry Road
> Huntingdon Valley, PA  19006

_____
HAROLD M. GOLDNER, ESQUIRE
Attorney for Plaintiff Caroline Gu Dellapenna

Date:  March 15, 2010