**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CAROLINE GU DELLAPENNA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TREDYFFRIN/EASTTOWN SCHOOL | : | |
| DISTRICT, et al | : | NO. 09-6110 |

## MEMORANDUM OPINION

Savage, J.                                                                      **January 13, 2011**

In this employment discrimination action,[1] the plaintiff Caroline Dellapenna claims she was terminated from her position as director of finance with the Tredyffrin/Easttown School District ("School District") on the basis of her race, gender, and national origin,[2] and because she had complained about discrimination. Dellapenna has named as defendants the School District, her former employer; Michael Azzara, her former supervisor; and Daniel Waters, the School District's superintendent.

Moving for summary judgment, the defendants contend that Dellapenna cannot make out a claim for employment discrimination because there is no evidence that the decision to fire her was pretext for discrimination. They also argue that she has not made out a claim of retaliation. According to the defendants, Dellapenna was fired for misfeasance and nonfeasance, creating a hostile working environment for her staff, and instructing her staff to use improper accounting methods in preparing the budget for the School District's annual financial report. Dellapenna filed her own motion for summary

---

[1] Dellapenna asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 and the Pennsylvania Human Relations Act, 43 P.S. § 951 ("PHRA").

[2] Dellapenna originally included a claim for age discrimination. After oral argument, she withdrew that claim and agreed to the dismissal of Counts V and VI of her amended complaint.

judgment, arguing that she is entitled to judgment on her retaliation claim.

Because Dellapenna has failed to produce sufficient evidence from which a jury could reasonably conclude that the School District's asserted non-discriminatory reasons were not the actual reasons for firing her, and instead it intentionally discriminated against her on the basis of race, gender or national origin, or subjected her to retaliation, the defendants' motion for summary judgment will be granted and Dellapenna's motion will be denied.

## Background

Dellapenna was hired by the School District as Controller in 1996. She was promoted to Director of Finance in June of 2006, the position she held until her termination on January 26, 2007. Among her responsibilities was preparing the budget for the School District's annual financial report.

On June 30, 2006, after completing an annual audit, the School District's outside auditor, Rainer & Company ("Rainer"), reported that approximately $200,000 in accrued expenses were not supported by documentation, accrued expenses for 2005 had been overstated by $733,682.95, and accrued expenses for 2006 were overstated by $697,620.35. As a result of these overstatements, 2006 expenses were increased by $36,062.60.[3]

In September of 2006, Michael Azzara, the School District's chief operations officer and Dellapenna's supervisor, was contacted by Lois Heist, the School District's director of personnel about complaints regarding Dellapenna. Heist reported that two employees

---

[3] This figure represents the difference between the $733,682.95 expense overstatement in 2005, and the $697,620.35 expense overstatement in 2006.

working for Dellapenna, Debbie Dudzinski and Kim Tran, complained that Dellapenna treated her staff in an abusive manner and instructed them to use improper accounting methods. Tran told Heist that Dellapenna "asked her to carry out questionable accounting actions." Dudzinski explained that Dellapenna instructed her to use "unsupported accounts payable accruals to reduce the fund balance." *Heist Report to Committee,* January 18, 2007.

After meeting with Heist, Azzara interviewed staff members who had complained about Dellapenna. He documented each employees' statement.

On October 9, 2006, based upon the auditors' findings, the School District's solicitor, Kenneth Roos, recommended that the School District hire a forensic accountant to conduct an independent audit of the 2005 and 2006 audits. *Roos Depo.*, pp. 38, 8-12; 39, 5-8. Roos made his recommendation because the unsupported accruals found by Rainer, coupled with Dellapenna's staff's allegations that "[s]he had told them to execute improper transactions," raised a suspicion of fraud. *Roos Depo.,* pp. 42, 20-22; 48, 12-16. Acting on its solicitor's advice, the School District hired forensic accountant Elliot Roth to review the School District's 2005 and 2006 audits.

On October 19, 2006, Waters and Heist informed Dellapenna that members of her staff had raised questions about her accounting practices and mistreatment of them. They advised her they would discuss the allegations upon completion of the annual financial report.

In a November 1, 2006 email to Heist, Waters, and Azzara, Dellapenna requested documentation supporting the complaints against her. Two days later, Heist reiterated that the issues would be addressed upon completion of the 2006 annual financial report, at

which time Dellapenna could respond to the allegations.

On November 21, 2006, in a memorandum to Waters, Dellapenna complained about statements accusing her of fraudulent conduct she had overheard Azzara make on a telephone call while she was getting water from a water cooler next to his office. She "believe[d]" Diana Wagner, the purchasing clerk, overheard the conversation. *Dellapenna Depo.,* p. 228, 8-17. Dellapenna requested an "investigation be conducted into Mr. Azzara's conduct." Waters advised her that he had spoken to Azzara and would review her accusations after the annual financial report was completed.

On December 15, 2006, Dellapenna again complained to Waters that Azzara made inappropriate statements about her. She reported that the previous day she overheard another Azzara telephone conversation regarding overstated accruals. Dellapenna was offended that he would make these statements with his office door open. She testified that two staff members, Clair Zetts and Wagner, were close enough to overhear Azzara's conversation. However, she did not know if they did overhear it. *Dellapenna Depo.*, p. 242, 9-11.

On December 19, 2006, the School District submitted a representation letter to Rainer confirming that its "financial statements present fairly . . . the respective financial position of . . . the Tredyffrin Easttown School District." *Management Rep. Ltr.* ("Representation Letter"). An earlier draft of the Representation Letter had included a representation that the School District's management had "no knowledge of any fraud or suspected fraud affecting the School District." As a result of the overstated accrued expenses, the letter was modified to limit the scope of the School District's representations concerning fraud. The revised Representation Letter stated that, "[o]ther than errors . . .

pertaining to Accounts Payable, [w]e have no knowledge of any fraud or suspected fraud affecting the School District."

On December 20, 2006, Waters and Heist met with Dellapenna to report the allegations made by her staff about both her accounting practices and her mistreatment of staff. She was advised that her staff complained of "demeaning and humiliating treatment" and feared "retaliation." *Heist Report to Committee,* January 18, 2007.

The next day, Dellapenna emailed Roos and Azzara, pointing out that the revision to the Representation Letter "suggests there were fraud allegations regarding the accounts payable error." She requested that for "purpose of clarity" an additional sentence be included, "indicating that . . . fraud allegations . . . have been investigated and found groundless." Solicitor Roos responded by email the same day, stating that he did "not read the qualifications" the way she did. He concluded that the "qualifiers are appropriate" until completion of the forensic review.

In his forensic accounting report dated January 4, 2007, Roth concluded that there was no fraud in the overstatement of accrued expenses. But, he found that the accounting department's procedures to determine accrued expenses were not "in conformity with generally accepted accounting principles" and that Dellapenna was "aware" of it. Roth reported that Dellapenna rationalized the use of faulty procedures by, among other things, stating that "she would prefer that the financial statements overstated liabilities and understated the fund balance than the opposite."

Roth described the accounting department as "dysfunctional." He found "poor communication" between Dellapenna and her staff, and "personality conflict issues related to Ms. Dellapenna's functioning as supervisor in the accounting department." Roth

recommended that these conflicts be "addressed and resolved in order for the Accounting Department and the School District to move ahead and correct the dysfunctional attributes that currently exist."

The following day, January 5, 2007, Dellapenna complained to Waters that she had not received any documentation supporting the claims made by her staff. She also complained that she was subjected to a hostile work environment and was mistreated because of her "age, gender, race, and/or ethnic background."[4] She wrote as follows:

> [t]he raising of an entirely new set of allegations at our December 20th meeting after the initial fraud allegations were not substantiated appears to be a "fishing expedition" – an attempt to come up with new allegations when the old ones do not work out. This pattern of mistreatment, coupled with the failure to grant me a raise to my base pay when every other district administrators [sic] received one last June, has created a hostile work environment for me. I can only conclude that the way I have been treated over those baseless allegations is because of my age, gender, race, and/or ethnic background.

In accordance with School Board policy,[5] Roos referred her discrimination complaints to an *ad hoc* committee consisting of two School District board members, Deborah Rollins and Peter Motel, appointed by the School Board's President, Kevin Mahoney. They were charged with reviewing both Roth and Heist's reports concerning

---

[4] In a declaration submitted in support of her motion for summary judgment, Dellapenna claims she raised the issue of discrimination at the October 19, 2006 meeting with Heist and Waters. According to Dellapenna, this date is relevant because it proves the School District did not promptly investigate her complaints. In her deposition, Dellapenna did not testify that she had complained of discriminatory treatment before sending the January 5, 2007 memorandum to Waters. Moreover, as discussed below, when Dellapenna first complained about discrimination is irrelevant because the School District's failure to investigate her complaints is not an adverse employment action.

[5] Policy 4960 deals with "Procedure for Resolving Issues of Concern of Non-Contract Staff Members." Policy 4330 deals with "Unlawful Harassment by and of TESD Employees."

Dellapenna's discrimination claims and the allegations made against her by her staff.[6] Roos instructed Dellapenna to provide any information she had regarding her discrimination claims to him or the committee.

On January 16, 2007, in a memorandum to Motel, Rollins and Roos, Dellapenna claimed that changes made to the Representation Letter limiting the scope of the School District's representation concerning fraud, "demonstrate[ ] Mr. Azzara's insistence on the fraud allegation against me after they were proven groundless." She complained that she was not provided any documentation to support her staff's claims, and she reiterated her concern over Azzara's telephone conversations. She offered no evidence of discrimination.

In her presentation to the committee on January 18, 2007, Heist reported that Dellapenna's "treatment of her employees created an uncomfortable, compromised work environment, and that an atmosphere of fear and hostility exists frequently within the department." She concluded that "[t]here is no indication that what current employees reported to Mike Azzara and to me was based on Caroline's age, gender, race or ethnic background."

On January 25, 2007, Heist sent Dellapenna a memorandum summarizing the committee's review of her allegations of discrimination. She advised her that the committee found that Azzara's telephone conversations, which were overheard by Dellapenna, were not motivated by discrimination. It also noted that, despite having been given the opportunity to do so, Dellapenna failed to provide any evidence of discrimination.

[6] Waters delegated responsibility for investigating Dellapenna's discrimination claims to Heist pursuant to Policy 4330 ("Complaints of harassment shall be investigated by the Superintendent or his/her designee.").

It concluded that there was "substantial misconduct on [Dellapenna's] part justifying [her] dismissal."

In a letter on January 26, 2007, Waters advised Dellapenna that the School District and committee were recommending to the School Board that she be fired for cause. The letter charged her with "willful, wanton and/or gross misconduct as well as material and substantial dishonesty." Her "failure to rectify performance concerns and [her] supervisory and accounting practices warrant [her] dismissal." The recommendations were based on Roth's findings and Heist's report to the committee.

Dellapenna was advised that she had a right to a hearing before the School Board. She declined the invitation, and refused to participate in the process, even though she was warned that if she did not request a hearing, she would be discharged.

On March 16, 2007, Dellapenna was informed that she was terminated as of January 26, 2007.

## Legal Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In examining the motion, we must view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in her favor. *Conopco, Inc. v. U.S.*, 572 F.3d 162, 165 (3d Cir. 2009). This standard is applied with "added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 431 (3d Cir. 1997) (quoting *Robinson v. PPG Indus. Inc.,* 23 F.3d 1159, 1162 (7th Cir. 1994)).

The party moving for summary judgment bears the initial burden of demonstrating

that there are no genuine issues of material fact. Fed. R. Civ. P. 56(c). Once the movant has done so, the opposing party cannot rest on the pleadings. To defeat summary judgment, she must come forward with probative evidence establishing the *prima facie* elements of her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). An inference based upon speculation or conjecture does not create a material fact. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

In an employment discrimination case, "the burden of persuasion on summary judgment remains unalterably with the employer as movant." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008) (citation omitted). Hence, the employer must persuade the court that even if all of the inferences that could reasonably be drawn from the evidence are considered in the light most favorable to the plaintiff, no reasonable jury could find in her favor. *Id.*

### Employment Discrimination

A claim of intentional employment discrimination, disparate treatment, may be proven by either direct evidence of discriminatory intent or indirect evidence from which one can infer an intent to discriminate. *C.A.R.S. Protection Plus*, 527 F.3d at 364. Dellapenna does not rely on direct evidence. She is proceeding under a theory of indirect evidence.

Claims based on indirect evidence are analyzed under the three-step *McDonnell Douglas-Burdine* burden shifting standard. *Id.* (citing *McDonnell Douglas Corp. v. Green,*

411 U.S. 792, 802 (1973)).  The plaintiff must first present enough evidence to make out a *prima facie* case.  If she does, the employer must then produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action.  At the third step, to defeat summary judgment, the plaintiff must show that the employer's proffered reason was merely a pretext for the real reason behind the adverse action, namely intentional discrimination.  *Id.* at 364.

Claims arising under the PHRA are governed by the same standards set forth in Title VII.  *Jones v. School Dist. of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999).  Thus, the state causes of action rise or fall with the federal ones.

### *Prima Facie* Case

In order to make out a *prima facie* case of intentional discrimination under Title VII, Dellapenna must show that: (1) she is a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) similarly situated persons who are not members of the protected class were treated more favorably, or that the circumstances of the termination give rise to an inference of discrimination.  *Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 797-98 (3d Cir. 2003); *Wallace v. Federated Dep't Stores, Inc.,* 214 F. App'x 142, 144-45 (3d Cir. 2007).

Establishing a *prima facie* case of discrimination under Title VII is not difficult.  *C.A.R.S. Protection Plus*, 527 F.3d at 365 (citing *Burdine*, 450 U.S. at 253).  *See also Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) ("[T]here is a low bar for establishing a *prima facie* case of employment discrimination."); *Marzano v. Computer Sci. Corp.*, 91 F.3d 497, 508 (3d Cir. 1996) (stating that the evidentiary burden at this stage is "rather modest" because its purpose is to

demonstrate that discrimination could have been a reason for the employer's action).

The only element in dispute is the fourth one. The defendants acknowledge that Dellapenna, a woman of Chinese decent, is a member of a protected class. They concede that she was qualified for her position and that she suffered an adverse employment action.

The plaintiff may satisfy the fourth element by identifying another employee who shared "all relevant aspects" of her employment, *Warenecki v. City of Philadelphia,* No. 10-1450, 2010 WL 4344558, at *7 (E.D. Pa. Nov. 3, 2010) (internal citations and quotations omitted), and engaged in the same conduct for which she was disciplined. *Ade v. Kidspeace Corp.,* No. 10-1868, 2010 WL 4598116, at *6 (3d Cir. 2010); *Gazarov v. Diocese of Erie,* 80 F. App'x 202, 206 (3d Cir. 2003). Alternatively, because a plaintiff may be discriminated against because she is a member of a protected class without anyone similarly situated being treated differently, she may satisfy the fourth prong of a *prima facie* case by producing evidence of a "causal nexus between the harm suffered and the plaintiff's membership in a protected class, from which a reasonable juror could infer, in light of common experience, that the defendant acted with discriminatory intent." *Anderson v. Wachovia Mortgage Corp.,* 621 F.3d 261, 275 (3d Cir, 2010).

Dellapenna contends that Azzara, a white male, and Dudzinski, a white female, are proper comparators. With respect to Azzara, Dellapenna claims that he was responsible for ensuring that School District employees submit proper purchase orders documenting

expenses.[7]   She shifts blame for her accounting deficiencies to Azzara.  According to Dellapenna, because he failed to enforce this policy, she was forced to accrue expenses without proper documentation.  Thus, according to Dellapenna, although it was Azzara's fault that she overstated accrued expenses, he was not investigated or fired.

Dellapenna has not presented any evidence that she brought this issue to his attention or that he knew that there were undocumented expenses.  Even assuming this was established, there is no evidence that the School District, which took the action, knew it.

Dellapenna argues that Debbie Dudzinski, a white female staff employee in the accounting department, was treated more favorably because her complaint about Dellapenna's conduct was immediately "brought forward" by Heist.   In contrast, Dellapenna's complaints about Azzara's telephone conversations were "ignored for months."

Dellapenna's contention is groundless for two reasons.  First, Dellapenna was not ignored.  Waters responded to her complaints the same or the next day.  He informed Dellapenna that he had instructed Azzara to keep his office door closed during private conversations.  He also advised her that he intended to investigate her complaint once the annual financial report was completed.

Second, Dellapenna was a supervisor and Dudzinski was an employee under her

---

[7] School District Policy 3340 states: "Every purchase made on behalf of the District shall be made by formal purchase order, issued by authority of the responsible administrative officer, except those purchases made under provisions of the petty cash regulations.  No orders for goods or services shall be made prior to issuance of a properly approved purchase order, except in emergency situations that pose an immediate threat to health or safety of occupants of District facilities or to protect the District from substantial legal exposure.  All purchases shall be governed by the budget." ("Policy 3340").

supervision.  Dellapenna was finance director for the School District.  Her position was different than Dudzinski's and had different job responsibilities.  Dudzinski was a member of Dellapenna's staff.  Thus, Dudzinski was not similarly situated to Dellapenna.  *See, e.g., Ade v. Kidspeace Corp.,* 698 F. Supp. 2d  501, 515 (E.D. Pa. 2010) (comparators occupying different positions not similarly situated); *Wilcher v. Potter*, No. 08-2723, 2010 WL 2545963 at, *4 (D.N.J. June 18, 2010) (comparators must be of "similar rank" to be similarly situated).

Dellapenna has provided no evidence that male or non-Chinese employees who improperly carried out their job responsibilities or mistreated staff were treated more favorably than she was.  Nor has she produced any evidence of a "causal nexus" between her race, gender, or national origin, and the School District's decision to fire her.  *Sarullo,* 352 F.3d at 798.  Instead, she relies solely on her own subjective suspicions of discrimination.  Therefore, she has failed to establish a *prima facie* case of discrimination.

Even assuming that Dellapenna established a *prima facie* case of discrimination, she still cannot overcome summary judgment on her discrimination claims.  For the sake of completeness, we shall address the remaining two steps of the *McDonnell Douglas* analysis.

Legitimate Non-Discriminatory Reason

At the second step, the defendants bear the burden of showing a legitimate, nondiscriminatory reason for their actions.  This burden is "relatively light." *Fuentes,* 32 F.3d at 763.  The defendants claim that Dellapenna was investigated and fired because she knowingly overstated accrued expenses in violation of generally accepted accounting principles, instructed her staff to use improper accounting methods, and mistreated her

employees.  This constitutes a legitimate, non-discriminatory reason for firing her.

Dellapenna does not deny that she overstated accrued expenses.  Rather, she shifts the blame to Azzara and Waters, claiming that they did not enforce school policy requiring that expenses be properly documented.  Nor does she deny that she had instructed her staff to use improper methods.  Thus, she tacitly or impliedly admits that there was a legitimate, non-discriminatory reason for the School District to act.

Pretext

At the third step of the *McDonnell Douglas* test, Dellapenna has the burden of presenting evidence that the defendants' proffered reasons for terminating her employment were merely a pretext for discrimination.  *Wishkin v. Potter,* 476 F.3d 180, 185 (3d Cir. 2007); *Fuentes*, 32 F.3d at 763.  To defeat summary judgment, she must point to some evidence from which a fact finder could reasonably either disbelieve the defendants' legitimate reasons or believe that discrimination was more likely than not a motivating or determinative cause of the School District's action.  *Wishkin,* 476 F.3d at 185 (citing *Fuentes*, 32 F.3d at 764).

Dellapenna has not met her burden of showing any evidence of pretext.  With respect to Azzara, Dellapenna offers several examples she contends show discriminatory animus.  First, she claims that Azzara made a single discriminatory comment about professional women.  The comment was that "his wife does not work and he brings the bacon home and he likes it that way." *Dellapenna Depo.,* p. 124, 9-12.  She interpreted this statement to mean that "he has certain prejudice against working women." *Dellapenna Depo.,* p. 124, 13-15.  Absent any context, Azzara's alleged comment alone does not show discriminatory animus towards professional women.

A plaintiff's personal belief that the real reason for the job action was discriminatory animus does not create a genuine issue of material fact. *Waggoner v. Garland*, 987 F.2d 1160, 1164 (5th Cir. 1993). Subjective beliefs, without more, are not sufficient to defeat summary judgment, especially where the plaintiff does not deny the conduct relied upon by the employer for the job action.

Even if Azzara's comment did exhibit a discriminatory animus, stray remarks made by "'non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight.'" *Pivirotto v. Innovative Sys.,* 191 F.3d 344, 359 (3d Cir. 1999) (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)). Azzara had no decision making authority with respect to Dellapenna's termination. Indeed, the evidence shows that she was fired by the School Board after declining a hearing. *Waters Letter*, Jan. 26, 2007.

Dellapenna contends that Azzara's statements accusing her of fraud in two telephone conversations she overheard is evidence of his discriminatory animus. Assuming that Azzara did have these conversations, they were not of a discriminatory nature. Indeed, Dellapenna does not attempt to show how these conversations relate to discrimination. She merely speculates about his motivation, saying that she "cannot imagine why he [would say this], other than, again, being [discriminated against] because of my age, my race, my gender and my national origin." *Dellapenna Depo.,* p. 246, 22-24, p. 247, 1. She ignores the fact that those alleged statements, true or not, relate to her job performance, and not to her age, race, gender or national origin. Azzara was merely reiterating questions raised by the outside auditor and the solicitor.

Dellapenna testified that Azzara discriminated against her by "going behind [her]

back" and only interviewing those staff members "who complained about [her]." *Dellapenna Depo.,* p. 52, 19-20. According to Dellapenna, Azzara only invited six of her employees to meet and discuss her behavior. *Dellapenna Depo.,* p. 52, 21-22. She does not explain how the investigation was tainted by discrimination of any sort. There is nothing discriminatory about Azzara's actions. Considering he was investigating Dellapenna's improper behavior, it was appropriate for him to interview the individuals who made complaints. Had he acted without doing so, Dellapenna would have a legitimate argument.

Dellapenna claimed that on one occasion two payroll bookkeepers ignored her instructions concerning a tax issue. Instead, they went to Azzara who directed the employees to ignore Dellapenna's instructions and to follow his. According to Dellapenna, this incident "is a fine example of how [she] was being undermined by my supervisor." *Dellapenna Depo.,* p. 93, 9-10. Assuming this incident did occur, it is not clear how it supports a claim of discrimination. A superior overruling a subordinate, without more, is not discriminatory. He was just doing his job.

During her deposition, Dellapenna testified that Azzara's hiring a forensic accountant was a form of discrimination. *Dellapenna Depo.,* p. 105, 10. The forensic accountant was hired by the School District, not Azzara. Roos, the School District's solicitor, recommended that the School District hire a forensic accountant because the undocumented $200,000 accruals raised the possibility of fraud. *Roos Depo.,* p. 38, 24; p. 42, 20-21; p. 43, 14-17. Regardless of who hired the forensic accountant, Dellapenna admitted that she could only "surmise" that he was hired because of her race, age, gender and national origin. *Dellapenna Depo.,* p. 49, 8-16. She herself characterizes her

allegation as merely speculative.

Finally, Dellapenna testified that Azzara discriminated against her by "cutting [her] off" and "rolling his eyes" at her in meetings. She does not make any connection between Azzara's body language and discrimination. On the contrary, she later contradicts her own testimony by admitting that she did not know if Azzara rolled his eyes or cut her off because of her race, age, gender or national origin. *Dellapenna Depo.,* p. 127, 14.

Contrary to Dellapenna's counsel's assertion at oral argument, the declaration of Joette Grieco, a former accounting department employee, does not connect Azzara's body language to gender discrimination. In her declaration dated October 21, 2010, Grieco stated that "Michael Azzara did not seem to like to work with professional women. When I asked him a question, he would either cut me off or give me a one-line answer." Although this behavior may be discourteous, it does not show discriminatory animus. Significantly, there is no evidence that he treated male employees any differently.

To show that Waters discriminated against her, Dellapenna claims he "blew [her] off" when she complained about Azzara's telephone conversation. This does not show discrimination. Waters responded to her complaints almost immediately. Even if he had ignored Dellapenna's complaints, it is not clear how that shows discriminatory animus.

Dellapenna claims that Waters misrepresented Roth's report in his letter informing her that she was being charged with "willful, wanton and/or gross misconduct . . . for reasons set forth in the attached report from Dr. Lois Heist to the . . . Ad Hoc Committee regarding the investigation of personnel claims against you and for the reasons set forth in . . . [Roth's report]." Dellapenna contends that Roth's report concluded that she did not engage in fraud.

Waters did not accuse Dellapenna of fraud. He advised her that the recommendation to fire her was based on her misconduct as revealed in the Roth and Heist reports to the committee. In her report to the committee, Heist reported that Dellapenna had instructed her employees to use "questionable accounting actions, such as recording payable items in a prior year when they should properly be charged to the current year," and directed Dudzinski to make transfers that were "illegal." These accusations made by others formed the basis for the disciplinary proceedings. Waters was informing Dellapenna of why she was being fired. He did not make the decision to fire her. The School Board did.

Dellapenna has not provided evidence showing that the defendants' reason for firing her was pretextual. She points to no evidence in the record that the defendants were motivated by a discriminatory animus. Instead, she relies on ambiguous body language, speculation, and conjecture. In contrast, the defendants have presented unrebutted evidence that Dellapenna was investigated and fired because she knowingly overstated accrued expenses, instructed staff to use improper accounting methods and abused employees under her supervision.

### Hostile Work Environment

To state a hostile work environment claim, Dellapenna must show that: (1) she suffered intentional discrimination because of her race, gender or national origin; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same gender in that position; and (5) the existence of *respondeat superior* liability. *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006), *overruled in part on other grounds by Burlington Northern*

*& Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

In determining whether harassment is sufficiently severe or pervasive to create a hostile work environment, we must consider the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Jensen,* 435 F.3d at 451 (quoting *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 23 (1993)).

As we have already seen, Dellapenna has presented no evidence, direct or indirect, of any intentional discrimination. Nor has she proffered any evidence of severe or pervasive misconduct or inappropriate behavior directed towards her based on her protected status.

### Retaliation

To establish a *prima facie* case of retaliation, Dellapenna must show that: (1) she engaged in a protected activity; (2) the School District took an adverse employment action against her subsequent to the activity; and (3) there was a causal connection between her activity and the School District's action. *Marra v. Phila. Hous. Auth.,* 497 F.3d 286, 300 (3d Cir. 2007); *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (citations omitted).

There is no question that Dellapenna was engaging in protected activity when she alleged in her January 5, 2007 memorandum to Waters that she was being discriminated against based on her "age, gender, race and/or ethnic background."

Dellapenna claims she suffered an adverse employment action when she was terminated and the defendants failed to investigate her complaints. Her termination was an adverse employment action. The defendants' alleged failure to conduct an investigation

was not.  *See, e.g., Hare v. Potter,* 220 F. App'x 120, 134 (3d Cir. 2007) (defendant's "deficient investigation" does not constitute an adverse employment action); *Fincher v. Depository Trust and Clearing Corp.,* 604 F.3d 712, 721 (2nd Cir. 2010) ("an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for filing the same discrimination complaint.").

The plaintiff, in a retaliation claim, must show that the employment action that might have dissuaded a reasonable employee from making or supporting a charge of discrimination was a response to the plaintiff's opposition to, or participation in proceedings against, discrimination.  *Moore*, 461 F.3d at 342.  This causal connection between the employer's adverse action is the necessary third element.  In other words, the plaintiff must demonstrate that the employment action was caused by her protected activity.

To survive a motion for summary judgment, the plaintiff must produce some evidence from which a jury could reasonably conclude that the employer's proffered reason was false, and retaliation was the real reason for the adverse employment action.  *Id.*

With respect to the nexus prong, Dellapenna has failed to provide evidence of a causal link between her complaints and her termination.  She was fired by the School Board after an investigation that started before she ever complained of discrimination and was instigated by the findings of persons independent of the defendants.  Indeed, Roth, the forensic accountant, was hired before October 19, 2008, the date Dellapenna alleges that she first complained about discrimination.

Assuming Dellapenna could make out a *prima facie* case of retaliation, the defendants have articulated legitimate, nondiscriminatory reasons for her termination.  She was fired by the School Board, not Waters or Azzara, because she knowingly overstated

accrued expenses, instructed staff to use improper accounting methods and abused her employees.

The defendants having set forth legitimate nondiscriminatory reasons for her termination, the burden switches to Dellapenna to show pretext. As we have discussed earlier, Dellapenna has provided no evidence that the defendants' reasons for firing her were pretext for discrimination.

## Conclusion

After viewing the facts in the light most favorable to Dellapenna and drawing all reasonable inferences in her favor, we conclude there is insufficient evidence from which a jury could find that the defendants discriminated against her based on her race, gender or national origin, or retaliated against her. Therefore, because the defendants are entitled to judgment as a matter of law, their motion for summary judgment will be granted.